UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Ardo Dini,** | Civil No. 08-5852 (DSD/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael J. Astrue,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This litigation comes before the undersigned on the parties' cross motions for summary judgment (Doc. Nos. 10, 13). Barbara J. Kuhn, Esq., is representing plaintiff Ardo Dini. Lonnie F. Bryan, Assistant U.S. Attorney, is representing defendant Michael Astrue, who appears in his capacity as Commissioner of the Social Security Administration. These motions are referred to for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(a).

Ms. Dini (Dini) filed for disability benefits from the Social Security Administration (the SSA) on November 16, 2005. In the ensuing proceedings, Dini claimed that she suffered from several impairments. Among the physical impairments were pain, including headache, neck and shoulder pain, knee and foot pain, and generalized pain; respiratory ailments such as cough and asthma; gastrointestinal ailments including acid reflux; and various allergies. She also claimed mental impairments such as anxiety, depression, adjustment disorder, and somatoform disorder.

After her application was denied initially and on reconsideration, Dini asked for a hearing before an Administrative Law Judge (ALJ). The hearing took place on August 21, 2007, and the ALJ subsequently denied benefits by a decision on February 12, 2008. Finding that Dini had

several impairments, including acid reflux disease; chronic headache and other pain; depression; cognitive disorder; and somatoform disorder, the ALJ ruled that none of these impairments were severe enough to prevent Dini from working. In particular, the ALJ often determined that Dini was not credible, due to inconsistencies in her medical records and the doubts expressed by her treating physicians.

Dini then brought this action for judicial review. In her motion for summary judgment, she essentially argues that the ALJ did not have substantial evidence to conclude that she was able to work; the ALJ improperly discounted the opinions of treating physicians; and the ALJ did not consider how her mental impairments affected her ability to work. Through a counter motion for summary judgment, the Commissioner rejects these arguments and asserts that the findings of the ALJ are supported by substantial evidence.

This Court finds that the ALJ had cause to discount the opinions of certain physicians, in part because their opinions are founded on unreliable reports from Dini. But once these opinions are excluded, there is no other medical evidence to reasonably support the ALJ's findings about Dini's ability to work. As a result, this Court will recommend that this matter be remanded back to the ALJ for further proceedings.

**I.     BACKGROUND**

In her application for benefits, Dini alleged her disability began in January 2002. But in the current litigation, Dini asserts that her disability commenced in November 2005. (*See* Pl.'s Mem. at 13.) The ALJ examined evidence going back to November 2004, and in the interests of a complete review, this Court will do the same.[1]

---

[1]     Dini mentions that she reapplied for disability benefits in April 2008 and was granted benefits since that time. The record in the current action for judicial review, by comparison, does not go past September 2007. In any event, judicial review is limited to the administrative

2

From November 2004 through December 2006, Dini principally received treatment at a HealthPartners clinic in Minneapolis. (*See* Tr. at 171-230, 237-42, 251-334.) During this time, she was treated by several different physicians. For this review, it is not necessary to identify all those who were involved. In January 2007, Dini moved to the Bloomington Lake Clinic, also in Minneapolis. Her primary care physician there was Dr. Kenneth Haycraft. (*See* Tr. at 249-50, 335-38, 349-53.)

Dini, a Somalian immigrant, does not speak or read English. With a few exceptions that will be noted below, an interpreter was present during all her medical appointments, and thus her statements to medical providers were through the interpreter.

### A. Physical Impairments

#### 1. Headaches and Orthopedic Impairments

In an appointment in February 2005, Dini reported that she had suffered falls in 2002 and December 2004, and that the falls respectively caused chronic headaches and left knee pain. The treating physician recommended Tylenol for the pain and, for the left knee pain, referred Dini to an orthopedist. (Tr. at 211.)

Although Dini frequently received medical care in the ensuing months, she did not report or seek further treatment for her headaches or orthopedic concerns. During a visit on August 23, 2009, Dini reported headaches and neck pain. A nurse examined Dini, finding "fairly full" range of motion in the neck and some discomfort in the shoulder. The nurse did not observe any other problems with gait or movement. (Tr. at 182-84.)

---

record that was before the ALJ. *See, e.g., Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006). So any ensuing award of benefits does not influence the analysis here.

At a visit with a neurologist the next day, Dini reported the same symptoms, attributing them to her fall in December 2004. The neurologist examined Dini, finding no evidence of head trauma, but recommended that she receive a radiological scan of her head. (Tr. at 179-80.)

Dini again reported headaches and neck pain at a visit with a primary care physician on September 20, 2005. The physician observed that, even though Dini claimed to suffer headaches since December 2004, her medical history did not support this claim. As Dini had not received the radiological scans when scheduled, the physician reordered scans of the head and spine. The physician also prescribed Tylenol and proposed other pain management options. (Tr. at 179-80.) The record does not reflect prompt action on these concerns. Dini mentioned chronic pain and headache at visits in February 2006, but her physicians did not recommend further action at the time. (Tr. at 238-40.)

Around this time, Dini was briefly treated by Dr. Mohamud Afgarshe, at the International Health Clinic in Minneapolis. Afgarshe is Somali as well, but an interpreter was present during at least some of Dini's visits. (*See* Tr. at 278-79, 319.)

In the exam notes from their first visit on March 17, 2006, Afgarshe observed,

> This was a very difficult interview [because] I don't feel the interpreting was done well and the [patient] kept talking non-stop and wouldn't allow me to ask specific questions concerning her pain.

Afgarshe found that Dini went on "tangents," reporting leg and knee pain, and other generalized pain. Dini also said she had injured her left knee in 1999 and that it had substantially worsened recently. She added that she had to climb four flights of stairs to reach her apartment. (Tr. at 319-20.)

On examination, Afgarshe observed limited strength and range of motion in the left knee. To improve this, Afgarshe suggested ibuprofen, exercise, and physical therapy. Dini refused to

consider physical therapy and requested an x-ray of her knee. Afgarshe responded there was no evidence of fractures and assured her that no x-ray was needed. Dini did receive a radiological scan of the knee, however, that revealed mild arthritic degeneration. (Tr. at 297-98, 321.)

In ensuing visits in April and May 2006, Afgarshe did not devote substantial attention to pain. At their last visit on May 31, 2006, Dini reported chest wall pain. After examination and an x-ray, Afgarshe prescribed certain medications for pain management and recommended that Dini avoid "heavy weightlifting." (Tr. at 278-79.)

Dini continued to report various forms of pain in June and July 2006. During these visits, one physician observed that Dini was "difficult" and "didn't allow the interpreter to translate[.]" The physician also refused to sign certain disability forms for Dini, telling her that "many people are able to work . . . and as she has been resistant to all treatment methods . . . I would not [sign the forms]." No particular action was taken to treat Dini's pain. But another scan, taken on July 27, 2006, again showed arthritic degeneration in the left knee. (Tr. at 311, 313.)

For treatment of her left knee, Dini was referred to an orthopedist, Dr. Ralph Bovard, who saw her for the first time on August 4, 2006. At that exam, he found that Dini had full range of motion in the knee, but some tenderness and discomfort. Relying on the radiological scans, he diagnosed her with arthritic degeneration and injected a steroid into the knee. (Tr. at 276.)

At their next and final visit on August 23, 2006, Dini said that the steroid did not work. Bovard then proposed physical therapy, which Dini rejected. To rule out deep vein thrombosis, Bovard performed an ultrasound on Dini's legs, which did not show any problems. (Tr. at 273-74, 257.)

In the following months, Dini continued to report pain to other physicians. At a visit on September 12, 2006, one physician proposed an occupational medicine assessment, which Dini

5

refused. (Tr. at 307-08.) In a physician's exam notes from another visit on September 20, 2006, Dini "insist[ed] upon treatment for her pain." That physician further observed, "Her descriptions of symptoms are difficult to sort [out] and her understanding of the use of various medications seems very limited." (Tr. at 305, 307-08.)

On referral to a neurologist on November 8, 2006, Dini reported pain in her entire body. Dini did not allow a complete exam, and the neurologist later opined, "Neurological examination is not consistent with [Dini's] complaints at this point." (Tr. at 272.) Dini visited other doctors in the remainder of 2006, but the only proposed treatment for her pain was Tylenol, along with icing, physical therapy, and athletic bandaging. (Tr. at 270, 300.)

Dini first visited Dr. Kenneth Haycraft on January 8, 2007, reporting headaches and knee pain. On examination, Haycraft found that Dini had full range of motion in her neck, but some tenderness in her neck and shoulder muscles. To treat these issues, Haycraft proposed a course of physical therapy. (Tr. at 335, 338, 340.) The physical therapy proceeded for several sessions in March and April 2007, evidently without improvement. (Tr. at 341-42.)

Dini visited Haycraft several times in the following months. In addition to headaches and knee pain, Dini also started reporting foot pain and more generalized pain. Haycraft once noted, "[I]t was difficult to find a place in her body that didn't hurt." (Tr. at 337.) But Haycraft did not note particular distress. His exam notes indicate that, aside from adjusting medications for pain management, Haycraft did not devote particular attention to pain. (Tr. at 336-37, 349-52.)

To address the foot pain, Haycraft referred Dini to an orthopedic practice, which treated Dini from April through June 2007. The physicians there determined that Dini had arthritis and inflammation in her foot. They described her as cooperative and relaxed, but also noted that Dini

6

had a short and painful gait when she walked. To treat her concerns, the physicians prescribed a combination of medications and orthopedic foot supports. (Tr. at 345, 347.)

### 2. Respiratory Impairments and Allergies

The relevant record here can be traced back to a visit with an allergist on February 22, 2005, where Dini reported wheezing, coughing, and allergies. After examination, the allergist found no evidence of wheezing or asthma; and following several tests, the allergist also did not identify any allergens. (Tr. at 207-08, 267-69.) That allergist also completed a form stating that Dini had no limitations on her ability to work. (Tr. at 221.)

Dini continued to report wheezing and coughing at visits throughout summer 2005. (Tr. at 187, 190-91.) When she was referred to a neurologist for a visit on August 18, 2005, that doctor hypothesized that the cough was due to a facial tic. (Tr. at 185-86.) Dini intermittently reported chronic coughs and hiccups over the next year, during visits in October and November 2005 and February and April 2006. But no particular action was taken to treat these complaints. (Tr. at 173-76, 241-42, 238-40, 279, 318.)

Starting in February 2006, Dini also renewed reports that she was suffering from various allergies. Aside from claiming allergies "to all foods," she did not identify particular allergens, and these complaints did not prompt further treatment. (Tr. at 239-40, 314-16.) The remaining medical records do not state significant concerns about allergies or respiratory impairments, even though these are the only impairments Dini claimed when she originally applied for disability benefits in November 2005. (*See* Tr. at 137.)

### 3. Gastrointestinal Impairments

Dini consistently reported abdominal or gastrointestinal pain since November 2004. Her physicians diagnosed acid reflux disease and treated it with either proton pump inhibitors or anti-

7

ulcer medications. Dini often reported that these medications did not afford any relief, and so the acid reflux was often the focus of her treating physicians throughout 2005. (Tr. at 187, 193, 200, 205-06, 211, 217.) An esophagogram, taken on November 25, 2005, was normal. (Tr. at 227.)

Dini reported gastrointestinal distress to her physicians less frequently in 2006. After she reported it to Afgarshe at a visit on April 20, 2006, he prescribed a proton pump inhibitor. (Tr. at 279-80.) At another visit on June 6, 2006, Dini told a different provider that this medication was helping. (Tr. at 316.) Dini reported four years' ongoing stomach pain, without improvement, at a visit on September 12, 2006. (Tr. at 307-08.)

There is no further discussion of this condition until Dini started treatment with Haycraft. At their first visit on January 8, 2007, Dini stated that her current medication was ineffective, and Haycraft prescribed a different one. (Tr. at 335, 338.) At a visit on March 27, 2007, Haycraft took a gastrointestinal culture and found an infection, which was resolved with antibiotics. (Tr. at 347, 351-52.) The ensuing medical records do not show other concerns about gastrointestinal issues.

### B. Mental Impairments

The first indication of mental impairments surfaced at an appointment Dini had with a neurologist on August 24, 2005. Dini was reporting chronic cough, and the neurologist observed that this cough was "noticeably present when the issue was brought up and was absent when she was distracted[.]" (Tr. at 180.)

Dini visited Dr. Maddi Neeraja, a general practitioner, on October 26, 2005. Neeraja proposed that Dini go to a mental health specialist, to determine whether some of her symptoms were psychosomatic. (Tr. at 175-76.) But Dini apparently did not do so. At a visit on February 7, 2006, Neeraja urged Dini to seek mental health treatment, but she refused. (Tr. at 320-21.)

In her second visit to Afgarshe on April 20, 2006, Dini supplied a detailed social history, discussing the circumstances of her family. She reported that she had low energy, poor appetite, and difficulty sleeping. Afgarshe suspected that Dini had depression and adjustment disorder, and he prescribed an antidepressant. (Tr. at 280.) Dini returned to Neeraja on April 25, 2006. Neeraja found several symptoms of depression and agreed with Afgarshe's assessment. As a result, Neeraja again recommended that Dini seek mental health treatment and that she continue taking antidepressants. (Tr. at 318.)

Of the physicians who subsequently treated Dini in the ensuing months, most took note that she had previously been diagnosed with depression. They observed indicia of depression and generally suggested that Dini continue on antidepressants. (Tr. at 311, 313-15.) When Dini visited Neeraja in September 2006, Neeraja continued to urge mental health treatment, but Dini consistently refused. (Tr. at 305, 307-08.)

After Dini started treatment with Haycraft in January 2007, he essentially concurred with the prior diagnosis of depression and continued prescribing antidepressants. (Tr. at 335, 338.) In his notes from a visit on January 11, 2007, Haycraft also characterized Dini as "anxious." A few months later, at a visit on March 9, 2007, he expressly diagnosed her with anxiety. (Tr. at 336, 338.)

On June 21, 2007, Dini requested a note from Haycraft, asking that he direct her insurer to pay for transportation to the clinic by taxi. Haycraft noted,

> She apparently has trouble taking the bus and has gotten lost multiple times and unable to get to the clinic. She gets confused and does not understand the bus system.

(Tr. at 349.)

The record shows that Dini never received treatment from a mental health specialist. But she did receive an evaluation from a consulting psychologist, Dr. Robert Barron, on August 30, 2007. When Barron interviewed Dini, she was unable to provide her address, other "than [that she] lived in America," or the ages of her children. She asserted that she suffered from severe pain due to an automobile accident. She also reported low energy and poor appetite, and she showed symptoms of depression such as flat affect and listlessness. (Tr. at 362, 364-65.)

Barron administered several psychological tests, but found Dini had difficulty following directions or concentrating. From these tests, Barron found that Dini had profound cognitive deficits, minimal capacity to perform daily life activities, and severe depression. (Tr. at 362-66.)

### C. Proceedings before the ALJ

The hearing before the ALJ occurred on August 21, 2007. At the hearing, Dini testified that she was unable to recall the ages of her children. She also asserted that she could not climb more than one flight of stairs or walk more than one block. Because of her pain, Dini explained, she was unable to work or do any meaningful household activities. (Tr. at 33, 40, 43.)

Later in the hearing, the ALJ submitted a hypothetical to a vocational expert. In this hypothetical, he described a person who could lift or carry ten pounds frequently and twenty pounds occasionally, with some postural limitations; and who was illiterate and had the ability to perform simple, one or two step tasks that did not require concentration or significant social interaction. The expert concluded that such a person could perform jobs such as assembler or packager. (Tr. at 49-52.)

Around a month after the hearing, on September 27, 2007, Dini obtained physical and mental health assessments from Haycraft. Regarding her physical health, Haycraft opined that Dini could not sit, stand, or walk for more than thirty minutes due to pain and that she could not

lift more than ten pounds. (Tr. at 370.) On her mental health, Haycraft reiterated the assessment from Barron, adding that Dini's depression was so severe that she was essentially incapable of doing anything. (Tr. at 368-71.)

In the ensuing decision of February 12, 2008, the ALJ determined that Dini had several severe impairments including chronic headache with neck and shoulder pain; acid reflux disease; depression; somatoform disorder; and cognitive disorder. Regarding the mental impairments, the ALJ determined that none were severe enough to meet SSA listings for conditions that constitute a disability. (Tr. at 16-19.) The ALJ further found that, notwithstanding her physical and mental impairments, Dini was capable of a light-exertional level of work, consistent with the vocational hypothetical from the hearing. The ALJ thus concluded that Dini was not disabled and denied disability benefits. (Tr. at 22-24.)

This outcome was premised on several key determinations. One was that, according to the medical record, physicians did not observe significant limitations on her ability to work. To support this finding, the ALJ noted that aside from arthritic degeneration in the left knee, other medical tests had not shown problems. (Tr. at 21.) Another was that Dini had presented "widely inconsistent and contradictory" reports to various physicians, and thus she was misrepresenting the scope of her impairments, as part of "benefits seeking behavior." (Tr. at 17.)

The ALJ gave no meaningful weight to the limitations found by Barron and Haycraft in their assessments. The ALJ found that Dini only visited Barron once for a forensic assessment, and in light of the other misrepresentations by Dini, her behavior during that assessment did not accurately reflect her abilities. (Tr. at 17.) Because Haycraft is not a mental health specialist, and because his mental health assessment relied on Barron's evaluation, the ALJ rejected this assessment for the same reasons as Barron's. The ALJ further determined that the stringent

limitations in Haycraft's physical assessment were not supported by adequate medical evidence. (Tr. at 23.)

## II. DISCUSSION

### A. Standard of Review

In her arguments for summary judgment, Dini challenges several findings from the ALJ. As both parties have correctly stated, the underlying question here is whether these findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quotation omitted).

When assessing whether there is substantial evidence, a court must consider evidence that supports, and that which contradicts, the factual findings of the ALJ. *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). Those findings are not subject to reversal just because substantial evidence may also support another outcome. If it is possible to draw differing conclusions from the record, but one of those conclusions supports the findings by the ALJ, those findings must be affirmed. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

### B. Treating and Non-Treating Professionals

Dini argues that the ALJ either did not give enough weight to, or improperly discounted evidence from, two professionals: Barron, the author of the sole psychological assessment in the record; and Haycraft, her personal care physician in 2007. As this issue influences the analysis for Dini's remaining arguments, this Court will address this issue first.

Opinions from a treating physician are entitled to substantial weight. But such opinions do not have conclusive weight and must be supported by acceptable clinical or diagnostic data.

*Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). An ALJ may also grant less weight to an opinion that goes beyond the physician's area of specialty. *See, e.g., Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (giving less weight to opinion of physician, about mental impairments, where that physician was not licensed as a mental health professional).

By comparison, an opinion from a consulting or nontreating expert may be granted less weight. *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008). Where a consulting expert has only examined a claimant once or twice, an opinion from the expert cannot by itself supply substantial evidence about the claimant's impairments. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). An ALJ may also disregard an opinion from a consulting expert where it is inconsistent with the claimant's other activities and behavior. *See Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001) (concluding that an ALJ may disregard an IQ score, taken by a nontreating psychologist, where the score was inconsistent with the claimant's daily behavior).

Dini only visited Barron, the consulting psychologist, once. From tests and an interview during that visit, Barron found that Dini had profound cognitive deficits, severe depression, and was generally unable to perform daily life activities.

Other medical records corroborate the finding of depression. It was originally diagnosed by Afgarshe in April 2006, and in subsequent treatment records, most physicians adopted the diagnosis without further comment.

The same cannot be said for the cognitive deficits. As the ALJ correctly indicated, Dini pursued complicated medical treatment, and she often demanded particular treatments from her providers. (Tr. at 17-18.) And until she was evaluated by Barron, no other treating professionals suspected any cognitive deficits. Dini's behavior, therefore, cannot be easily reconciled with her alleged cognitive deficits.

More importantly, the ALJ observed that Dini may not have been fully candid with her medical providers. Several providers were skeptical about whether Dini was truthfully reporting her symptoms or her medical history. Dini did not consistently report her limitations, stating in March 2006 that she had to climb four flights of stairs to her apartment, yet testifying in August 2007 that she could not climb stairs at all. She told several providers that her knee pain was due to a fall, yet she told Barron that it was from an automobile accident.

When Barron's assessment is considered in light of the entire record, there is reasonable evidence to show that Dini exaggerated or falsified her symptoms. So even if Barron accurately diagnosed Dini's mental impairments, he may not have properly assessed their severity or their impact upon Dini's daily life activities. The ALJ could thus decide, on substantial evidence, that the assessment was inaccurate and unpersuasive.

This result also influences the assessments from Haycraft. When Haycraft supplied his mental health assessment, he essentially repeated the findings from Barron. And while Haycraft was treating Dini, he did not make any significant findings about her mental health, or assess the impact of her mental impairments on her daily activities. Because Haycraft did not support his assessment with acceptable data, the ALJ had substantial evidence to discount this assessment.

Turning to the physical assessment, Haycraft found, among other limitations, that Dini could not sit, stand, or walk over thirty minutes due to pain; and that she could lift or carry ten pounds frequently and twenty pounds occasionally. In his exam notes, however, Haycraft did not document behavior to support such stringent limitations. And the record lacks clinical data from Haycraft, or other medical providers for that matter, to justify this physical assessment. For these reasons, the ALJ also had substantial evidence on which to discount this assessment.

### C. Listed Impairments

Dini further argues that her impairments are commensurate to certain listed impairments under SSA regulations, and thus, she has established her disability. She claims her impairments equal those for depression and somatoform disorder, under listings 12.04 and 12.07 respectively.

Although there are several ways to demonstrate a listed impairment, the parties focus on whether Dini's mental impairments reached a requisite degree of functional limitations, pursuant to what the SSA regulations call "B criteria."[2] The limitations must consist of at least two of the following: (1) marked restriction in daily living activities; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation. 20 C.F.R. § 404 subp. J, Appx. (published by the SSA as the *Blue Book* (2008)).

Dini does not contest the last of these four categories, and the parties accordingly dispute whether Dini has established restrictions in daily living, social functioning, and concentration or pace. As the claimant, Dini has the burden to show that the specified criteria are met. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Where a listing requires proof of functional limitations, but claimant fails to present sufficient medical evidence of those limitations, an ALJ may conclude that the listing was not satisfied. *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007).

What occurred here was largely an absence of proof. For instance, regarding restrictions on daily living activities, the only medical providers to substantively comment were Barron and

---

[2] In to the listings, disability may be shown where the claimant satisfies both "A criteria," meaning proof of specified disorders or symptoms; and the aforementioned "B criteria," meaning proof of particular functional limitations. Dini argues that she satisfies both types of criteria. As the following discussion will demonstrate, the ALJ had substantial evidence to determine that Dini did not meet the B criteria. As a result, it is immaterial whether she met the A criteria.

Haycraft. But as discussed beforehand, there is reason to discount the assessment from Barron. And the only proof from Haycraft is a single anecdote about Dini getting lost on the bus system.

This reasoning applies with the same force to the other criteria. The record shows that Dini was sometimes obstreperous with her medical providers, and Haycraft sometimes described Dini as stressed or anxious, but this evidence does not necessarily compel the conclusion that she had marked restrictions in her social functioning. Regarding concentration or pace, the record demonstrates that Dini sometimes had difficulty relating her medical history. But not all medical providers observed such difficulties. It is also possible to find that Dini was misrepresenting her medical history, for the reasons discussed earlier, to Barron and other medical providers.

When the record is examined as a whole, therefore, it does not compel the conclusion that Dini had sufficient functional limitations to satisfy the listing criteria. There is not much medical evidence to establish the functional limitations, and other evidence reasonably supports a finding that she did not suffer from such limitations. As a result, when the ALJ determined that Dini did not meet the specified criteria for her selected listings, this finding was supported by substantial evidence.

### D.    Residual Functional Capacity

In her remaining argument, Dini contends that the ALJ did not have substantial evidence to support the findings about Dini's residual functional capacity (RFC)—or more simply put, regarding the findings about her ability to work.

As summarized above, the ALJ determined that Dini had multiple severe impairments, such as chronic headache with neck and shoulder pain; acid reflux disease; somatoform disorder; and cognitive disorder. The ALJ then found that, with these impairments, Dini was capable of

lifting ten pounds frequently and twenty pounds occasionally; and she could perform simple, one or two step tasks that did not require concentration or significant social interaction.

When deciding a claimant's ability to work, the findings of the ALJ must be supported by at least some medical evidence. If physicians have conflicting opinions regarding a claimant's limitations, but at least some of their findings describe the extent of those limitations, then there is enough evidence for the ALJ to find comparable limitations. *See, e.g., Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (holding that ALJ properly based RFC on observations by treating physician and opinions of nontreating physicians); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (reversing an ALJ who found severe impairments, yet lacked medical evidence to support particular findings about the claimant's RFC).

What is problematic is that the ALJ made specific findings, regarding the extent of Dini's limitations, that are not borne out by the medical record.[3] The ALJ determined that Dini could lift ten pounds frequently and twenty pounds occasionally, but the record lacks any indication that a medical professional ever measured Dini's ability to lift or carry. The ALJ also found that she could do simple, one or two step tasks that do not require concentration or social interaction. Yet Dini's treating physicians did not address these limitations, and the ALJ rejected the sole psychological assessment to squarely examine these concerns.

The ALJ made several specific findings regarding Dini's ability to work. Although some non-medical evidence may anecdotally support these findings, there is no medical evidence that reasonably supports certain specific findings from the ALJ. Without some supporting medical

---

[3] The ALJ had reason to find that many of the asserted impairments did not significantly affect Dini's ability to work. For instance, the record does not say how the acid reflux disease, or pain from that condition, would interfere with work. The same can be said for the allergies and respiratory complaints. So it was reasonable for the ALJ to devote less discussion to these issues.

evidence, there is not substantial evidence regarding Dini's ability to work. This Court therefore concludes that this matter should be remanded to the ALJ for further proceedings. *See* 42 U.S.C. § 405(g).

## III. CONCLUSION

On judicial review of the decision from the ALJ, Dini essentially raises three arguments. In part, she contends that the ALJ improperly discounted opinions from some professionals. As these opinions were either influenced by apparent misrepresentations from Dini, or were not supported by acceptable clinical data, the ALJ had cause to discount them. Dini further argues that she established disability in accordance with administrative listings, but the record does not compel this conclusion from the ALJ.

Dini also contends that the ALJ did not properly assess her ability to work. This Court concludes that, though ALJ made specific findings about the impact of Dini's impairments, there is not reasonable medical evidence to adequately support these findings. As a result, the findings are not founded on substantial evidence, and this matter is appropriately remanded to the ALJ for further proceedings. This Court recommends that the parties' motions be decided accordingly.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Dini's motion for summary judgment (Doc. No. 10) be **GRANTED.**

2. The Commissioner's motion for summary judgment (Doc. No. 13) be **DENIED.**

3. This matter be **REVERSED AND REMANDED** to the ALJ for further proceedings consistent with this report.

4. This litigation be closed and judgment entered.

Dated this 29th day of July, 2009.

                                                                       s/ *Jeanne J. Graham*
                                                                        JEANNE J. GRAHAM
                                                                        United States Magistrate Judge

**NOTICE**

       Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **August 12, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.